

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Olin Culberson, Chairman
Railroad Commission of Texas
Austin, Texas

a-6256 in full

Opinion No. O-6916

Re: Construction of the provisions
of Article 911b, V. A. C. S.,
relating to "specialized motor
carriers"

Dear Sir:

Your letter of April 13, 1946, requests the opinion
of this Department as follows:

"There are now pending before the Commission
several applications to transport frozen foods
and other commodities requiring refrigeration in
transit. These applications are filed for author-
ity to operate as specialized motor carriers. We
anticipate that in the immediate future more of
these applications or ones of similar nature will
be filed.

"In this particular type of application, the
legal question has arisen as to whether or not
Article 911b confers on the Commission the power
to grant the type of certificate sought by the
applicants, and in order to assist us in the trial
and disposition of these applications, we respect-
fully request that you interpret Article 911b with
respect to the following questions:

"1. Article 911b, Section 1(i) reads as follows:

"* * *        (Statute quoted in body of opinion)

is a mechanically refrigerated trailer such type
of "specialized equipment" as to permit the Commission

to grant a carrier a Specialized Motor Carrier Certificate authorizing the transportation of commodities not specifically named in such section, but which require the use of such trailer in transit?

"2. Under Subdivision 4 of paragraph 3, Section 1(i), can the Commission grant authority as a Specialized Motor Carrier to transport commodities which do not require any special device, facility or equipment for the loading or unloading thereof, but which do require special devices, facilities, or equipment for the preservation of the commodity in transit?

"3. Under the above Section, can the Commission grant a Specialized Motor Carrier Certificate authorizing the transportation of any commodity except those specifically named in such section, namely:

"Household goods, office furniture and equipment, livestock, livestock feedstuff, farm machinery, grain, timber in its natural state, milk, wool, mohair, oil field equipment and pipe used in the construction and maintenance of water lines and pipe lines."

Section 6(d) of House Bill 335 of the 42nd Legislature (Acts 1931, 42nd Leg., page 480, chapter 277) introduced into our statutes what became known as "Special Commodity Permits". The Act authorized the Railroad Commission to grant permits for the transportation of the following special commodities: livestock, livestock feedstuff, grain, farm machinery, household goods, timber when in its natural state, milk, wool, mohair and oil field equipment. By House Bill 1005 of the 45th Legislature (Acts 1937, 45th Leg., page 651, chapter 321) "used office furniture and equipment" was added to the list.

In 1941 the 47th Legislature by House Bill 351 (Acts 1941, 47th Leg., page 713, chapter 442; Article 911 b , Sections 1(1), 5a, 6(d), V. A. C. S.) created a special class of common carriers to be known as "specialized motor carriers", the essential distinction of which is the right to operate over irregular routes on irregular schedules.

Honorable Olin Culberson - Page 3

Section 2 of House Bill 351 (Article 911(b), Section 1(1)) amended Section 1 of House Bill 654 of the 41st Legislature, as amended by House Bill 335 of the 42nd Legislature, by adding the following definitions:

"(1) 'Specialized motor carrier' means any person owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting, over any public highway in this State, over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof; provided, that the term 'specialized motor carrier' as used in this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns; and, provided further the term 'specialized motor carrier' as used herein shall include those carriers who engage or desire to engage exclusively in the transportation of livestock, livestock feedstuff, grain, farm machinery, timber in its natural state, milk, wool, mohair, or property requiring specialized equipment as that term is hereinafter defined, or any one, or more, of the foregoing named commodities.

"For the purpose of this Act, the term 'specialized equipment' includes, but is not limited to block and tackle, hoists, cranes, windlasses, gin poles, winches, special motor vehicles, and such other devices as are necessary for the safe and proper loading or unloading of property requiring specialized equipment for the transportation and handling thereof.

"For the purpose of this Act, the term 'property requiring specialized equipment' is limited to (1) oil field equipment, (2) household goods and used office furniture and equipment, (3) pipe used in the construction and maintenance of water lines and pipe lines, and (4) commodities which by reason of length, width, weight, height, size, or other physical

Honorable Olin Culberson - Page 4

characteristic require the use of special de-
vices, facilities, or equipment for their
loading, unloading, and transportation.

"For the purpose of this Act, the term 'oil
field equipment' means and includes machinery,
materials, and equipment incidental to or used
in the construction, operation, and maintenance
of facilities which are used for the discovery,
production, and processing of natural gas and
petroleum, and such machinery, materials, and
equipment when used in the construction and
maintenance of pipe lines."

Section 3 of House Bill 351 (Article 911b, Section
6(d)) amended Section 6(d) of House Bill 335 (42nd Legislature)
and followed the enumeration of special commodities originally
contained in House Bill 335 with the addition of used office
furniture and equipment which had been added by House Bill
1005 of the 45th Legislature.

Section 4 of House Bill 351 (Article 911b, Section 5a)
amended the 1929 and 1931 Acts to add Section 5a. Subsection
(b) of the added Section 5a coincided with amended Section 6(d)
in the listing of special commodities. This enumeration
in amended Section 6(d), which is the same as in subsection
(b) of added Section 5a, in turn corresponds with the enumera-
tion in the second proviso of the first paragraph of paragraph
(i) plus parts (1) and (2) of the definition of "property re-
quiring specialized equipment" in paragraph (i) (Article 911b,
Section 1(1)).

The import of these enumerations of special com-
modities is that they have been legislatively removed from
any limitations, touching the necessity for specialized equip-
ment in their handling and transportation, which would consti-
tute conditions to the granting of a specialized motor carrier
certificate for their transportation. (This applies with
equal force to part (3) of the definition of "property re-
quiring specialized equipment": "(3) pipe used in the con-
struction and maintenance of water lines and pipe lines,").

It is this question--the requirement of specialized
equipment for loading, unloading and transportation--which is

Honorable Olin Culberson - Page 5

the crux of part (4) of the definition of "property requiring specialized equipment":

> "(4)   commodities which by reason of length,
> width, weight, height, size, or other physical
> characteristic require the use of special de-
> vices, facilities, or equipment for their load-
> ing, unloading, and transportation."

The foregoing language of part (4) expressly reads "loading, unloading, and transportation". Likewise, the preceding definition of "specialized equipment" in subsection (1) employs the language "and such other devices as are neces-sary for the safe and proper loading or unloading of property requiring specialized equipment for the transportation and handling thereof", and the basic definition of a specialized motor carrier contains the language "property requiring spec-ialized equipment in the transportation and handling there-of."

Thus, all the definitions embody the condition that for any commodity not enumerated to qualify under part (4) of the definition of "property requiring specialized equipment", it must be of such a nature that specialized equipment is necessary in both its handling (loading and unloading) and transportation.  This is also in harmony with the wording of the caption to House Bill 351 "and commodities requiring specialized equipment in the transportation and handling there-of".  The only suggestion of a contrary legislative purpose is found in Section 1 of House Bill 351--the declaration of policy--but we are clear in the opinion that the unambiguous provisions of the specific definitions within the Act should be held to prevail over the language in the general declaration of policy.

We therefore answer your questions 1 and 2 in the negative; namely, that the Railroad Commission is without authority to grant a specialized motor carrier certificate for the transportation of frozen foods (not one of the special commodities listed) requiring specialized equipment--a mechanically refrigerated trailer--in transit only, or for the transportation of any commodity not listed as a special commodity which does not require specialized equipment in its loading and unloading, even though specialized equipment may be necessary in its transportation.

Honorable Olin Culberson - Page 6

In answer to your third question, it is our opinion that in addition to the enumerated special commodities, the Railroad Commission is authorized to grant a specialized motor carrier certificate for the transportation of a specific commodity which by reason of its physical characteristics requires the use of specialized equipment in its loading, unloading and transportation. It would be required, of course, that the order and certificate in such case specify the commodity for the transportation of which the specialized motor carrier certificate has been granted.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Zollie C. Steakley
Assistant

ZCS:jt

